**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

JOSEPH SHARPE, an Individual

Civil Case No. 1:20-cv-00099

Plaintiff,

v.

C.R. BARD, INC., a New Jersey corporation; BARD PERIPHERAL

VASCULAR, INC., an Arizona corporation, and DOES 1 through 10

Defendants.

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

## INTRODUCTION

1.      This is an action for damages against C.R. BARD, BARD PERIPHERAL VASCULAR, INC. and DOES 1 through 10 hereinafter collectively referred to as "Bard." "Defendants." The allegations, claims and theories of recovery relate to the Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion and/or distribution of its unsafe medical devices known as [Bard G2 Filter , Bard Meridian Filter , Bard Recovery Filter ] hereinafter " Bard IVC Filters" or " Bard's IVC Filters."

2.      Bard IVC Filters are associated with, and cause, an increased risk for serious injury and death as a result of adverse events including: tilting, perforation, fracture, breakage and migration.

3.      At all times relevant to this action, Bard intentionally, recklessly, and/or negligently failed to act as to the known failures and injuries associated with its devices and/or failed to warn about

and concealed, suppressed, omitted, and/or misrepresented the risks, dangers, defects and disadvantages of its IVC Filters.

4.     At all times relevant to this action, Bard intentionally, recklessly, and/or negligently advertised, labeled, promoted, marketed, sold and/or distributed its IVC Filters as a safe medical device when in fact Bard had reason to know, and/or did know, that its IVC Filters were not safe for its intended purposes, and that its IVC Filters caused serious injury and death.

5.     At all times relevant to this action, Bard is and was strictly liable for injuries caused by its IVC Filters because the devices are unreasonably dangerous and not accompanied by adequate warnings about its danger.

**PARTIES & JURISDICTION**

6.     Plaintiff Joseph Sharpe ("Sharpe") is a citizen of and resident of Noble County Indiana. On March 28, 2012 Sharpe was implanted with a Bard Meridian Vena Cava Filter ( referred to as "Device " or "Meridian Filter"). On March 3, 2018, Dr. Christopher Wing, MD noted the filter at the renal vein with mild anasarca increased demonstrating possible early perforation but nothing significant. On May 29, 2019, Sharpe received a second opinion of his filter. It was noted at the superior L1 to inferior L2 interspace with grade three perforation with a right lateral strut extending 10 mm outside the caval wall abutting the duodenum. As a direct and proximate result of having Defendants' IVC Filters implanted in him Mr. Joseph Sharpe has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Mr. Sharpe has suffered emotional trauma, harm and injuries that will continue into the future. Mr. Sharpe has lost their ability to live a normal life and will continue to be so diminished into the future. Furthermore, Mr. Sharpe has medical bills both past and future related to care because of the IVC filters' defects.

7.     Defendant C.R. Bard, Inc. ("C.R. Bard") is a corporation duly organized and existing under the laws of the state of Delaware and has its principal place of business in New Jersey. Bard, at

all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Recovery®, 02®, 02®X (02 Express®), Eclipse®, Meridian®, and Denali® Filter Systems to be implanted in patients throughout the United States including the State of Indiana Mr. Sharpe's  states of residence and/or injury.

8.     Defendant Bard Peripheral Vascular, Inc. ("BPV") is a wholly-owned subsidiary corporation of Defendant C.R. Bard, with its principal place of business at 1625 West Third Street, Tempe, Arizona. BPV, at all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Recovery®, 02®, 02®X(02 Express®), Eclipse®, Meridian®, and Denali®  Filter systems to be implanted in patients throughout the United States, including the State of Indiana Mr. Sharpe's state of residence and/or injury.

9.     There exists, and at all relevant times existed, a unity of interest in ownership between certain defendants and other defendants such that any individuality and separateness between the certain defendants has ceased and those defendants are the alter ego of the other certain defendants, and exerted control over those  defendants.

10.     Adherence to the fiction of the separate existence of these certain defendants as any entity distinct from other certain defendants would permit an abuse of the corporate privilege, sanction fraud, and promote injustice. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned each of the Defendants were the agent, servant, employee, and/or joint venturer of the other co-defendants, and at all said times each Defendant was acting in the full course, scope, and authority of said agency, service, employment, and/or joint venture.

11.     "Bard" or "Defendants" includes any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind; their

predecessors, successors, and assigns; their officers, directors, employees, agents, representatives; and any and all other persons acting on their behalf.

12.     At all times alleged herein, the  Bard defendants include any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

13.     Bard develops, manufactures, sells and distributes medical devices for use in various medical applications including endovascular cardiology, and surgical products throughout the United States and around the world.  Bard's products at issue in this matter include the Bard Meridian Vena Cava Filter used for the prevention of recurrent pulmonary embolism via placement in the vena cava.

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs and there is complete diversity of citizenship between Plaintiff and Defendant.

15.     The Court has personal jurisdiction over the Plaintiff under 28 U.S.C. §1391, as because the Plaintiff resides in this District and all Defendants regularly conduct business in this State. within this state and have continuous and systematic contacts in every state in the United States of America, including this state, which is Mr. Sharpe' states of residence.

16.     At all times relevant,  Bard was engaged in the business of researching, designing, testing, developing, manufacturing, packaging, labeling, marketing, advertising, distributing, promoting, warranting and selling in interstate commerce, its IVC Filters either directly or indirectly through third parties or related entities.

17. The Defendants are subject to *in personam* jurisdiction in each state because of the activity conducted therein. Defendants' activities in each state include: marketing, advertising, promoting, distributing, and receiving substantial compensation and profits from sales and other acts that caused or contributed to the harm giving rise to this action. Defendants also made or caused to be made material omissions and misrepresentations and breaches of warranties in Indiana and Mr. Sharpe' states of residence.

## VENUE

18. For purposes of  trial, venue is proper pursuant to 28 U.S.C. §1391 in the Northern District of Indiana , Sharpe's federal state of residence.

19. A substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District. Therefore, venue is proper in this jurisdiction under 28 U.S.C. §1391.

## FACTUAL BACKGROUND

### THE MERIDIAN FILTER

20. On March 28, 2012, Mr. Sharpe was implanted with a Meridian filter. The Device subsequently malfunctioned  and caused  injury and damages to Bradford, including without limitation perforation of the IVC, migration, embedment, pain, emotional distress, suffering, and loss of enjoyment of life.

21. In an effort to resolve the complications associated with the G2/G2X/Eclipse  filters, Bard  designed  the Meridian  Vena  Cava Filter  as  the next  generation  in  its filter family.

22. The Meridian  Filter  was  cleared  by  the FDA  on August 24, 2011.  The Meridian Filter  was  based  on  the same  defective  design platform  as Bard's  predecessor filters,  but  added, in  pertinent  part,  caudal  migration  anchors  in  an  attempt  to  increase   stability  within  the vena cava.  The Meridian  was  the first Bard filter to add caudal anchors,  despite Bard  being aware since

- 5 -

late 2005 of the need for caudal anchors to decrease tilt, caudal migration, perforation and fracture. Despite awareness of the need to correct the problems its filters had with stability in the IVC, Bard launched 2 more filters, the G2X and Eclipse, before attempting to correct this issue 5 years later with the Meridian Filter.

23.     The Meridian Filter continued to share the same design defects and complications associated with the Recovery and G2/G2X/Eclipse filters due to the fact that the Meridian design was based on its predecessors.

24.     Soon after launching the Meridian, Bard began receiving similar complaints associated with the Meridian filter as it had with the predecessor filters. For the reason that the Meridian is based on Bard's previous filter designs, the Meridian filter shares the same or similar design and manufacturing defects as Bard's previous filters and causes the same complications and defects.

25.     However, as seen with the Recovery®, G2®, and Eclipse® filters, soon after its introduction to the market reports surfaced that the Meridian® filters were fracturing, perforating, migrating, and/or tilting in the patients in which they were implanted.

26.     The Meridian® filter was also plagued with the same manufacturing and design defects that were causing damage to the general public as Bard's predecessor retrievable filters.

27.     Defendants sought Food and Drug Administration ("FDA") approval to market the Bard Filters and/or its components under Section 510(k) of the Medical Device Amendment. Section 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp*., 376 F.3d 163, 167 (3d Cir. 2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)…A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis…The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours…Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

28. An IVC filter, like the Bard Filters, is a device designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

29. The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are

considered "pulmonary emboli" or PE. An IVC filter, like the Bard IVC Filters, is designed to prevent thromboembolic events.

30.    The Bard Filters are retrievable filters.

31.    At all times relevant hereto, the Bard Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava. At all times relevant hereto, Defendants knew its Bard Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

32.    At all times relevant hereto, the Defendants continued to promote the Bard Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.

33.    The Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Bard Filters, as aforesaid.

34.    Upon information and belief, Bard IVC Filters contain a manufacturing defect, in that the differed from the manufacturer's design or specifications, or from other typical units of the same product line.

35.    At this time, all Bard IVC Filters are misbranded and adulterated by virtue of them failing to be the substantial equivalent of their predecessor devices, all of which were required to be as safe and effective as the original predicate device, the Simon Nitinol Filter, and none were/are, maldng them subject to c01Tective action, including recall, in the interest of patient safety. The use of each of these subject devices was inappropriate and illegal since each was being marketed while adulterated and misbranded for failing, among other things, to be as safe and effective as the originating predicate device, SNF.

36.     At all relevant times, safer and more efficacious designs existed for this product, as well as reasonable treatment alternatives.

37.     At all times relevant hereto, the Defendants failed to provide sufficient warnings and instructions that would have put Mr. Sharpe and the general public on notice of the dangers and adverse effects caused by implantation of the  Bard Filters, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

38.     The  Bard Filters were designed, manufactured, distributed, sold and/or supplied by the Defendants, and were marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Defendants' knowledge of the products' failure and serious adverse events.

39.     That at all times relevant hereto, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Mr. Sharpe.

## COUNT I: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

40.     Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

41.     Bard IVC Filters were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including Mr. Sharpe, of the dangerous risks associated with the subject product, including but not limited to the risk of tilting, perforation, fracture and migration which are associated with and did cause serious injury and/or death. Information provided by  Bard to the medical community and to consumers concerning

the safety and efficacy of its IVC Filters did not accurately reflect the serious and potentially fatal adverse events Mr. Sharpe could suffer.

42. At all times relevant hereto, the Bard IVC Filters were dangerous and presented a substantial danger to patients who were implanted with the Bard IVC Filters, and these risks and dangers were known or knowable at the times of distribution and implantation in Mr. Sharpe. Ordinary consumers would not have recognized the potential risks and dangers the Bard IVC Filters posed to patients, because their use was specifically promoted to improve health of such patients.

43. Had adequate warnings and instructions been provided, Mr. Sharpe would not have been implanted with Bard IVC Filters, and would not have been at risk of the harmful injuries described herein. The Defendants failed to provide warnings of such risks and dangers to the Mr. Sharpe and their medical providers as described herein. Neither Mr. Sharpe, nor Mr. Sharpe' physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by Bards' IVC Filters.

44. Defendants knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by Bard IVC Filters.

45. Mr. Sharpe, individually and through their implanting physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

46. Defendants had a continuing duty to warn Mr. Sharpe and their physicians of the dangers associated with the subject products.

47. Safer alternatives were available that were effective and without risks posed by Bards' IVC Filters.

48. As a direct and proximate result of the Bard IVC Filters' defects, as described herein, Mr. Sharpe suffered permanent and continuous injuries, pain and suffering, disability and impairment.

Mr. Sharpe have suffered emotional trauma, harm and injuries that will continue into the future. Mr. Sharpe have lost their ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Mr. Sharpe will continue into the future to have medical bills, both past and future, related to care because of the Bard IVC Filters' defects.

49.     By reason of the foregoing, Defendants are liable to the Mr. Sharpe for damages as a result of their failure to warn and/or adequately warn the Mr. Sharpe and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

50.     **WHEREFORE**, Mr. Sharpe, demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper.

## COUNT II: STRICT PRODUCTS LIABILITY – DESIGN DEFECT

51.     Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

52.     Defendants have a duty to provide adequate warnings and instructions for their products including their IVC Filters, to use reasonable care to design a product that is not unreasonably dangerous to users.

53.     At all times relevant to this action, Defendants designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted and sold their IVC Filters, placing the devices into the stream of commerce.

54.     At all times relevant to this action, Bard's IVC Filters were designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a condition that was defective and unreasonably dangerous to consumers, including Mr. Sharpe.

55.    Bard IVC Filters are defective in their design and/or formulation in that they are not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

56.    Bard IVC Filters were expected to reach, and did reach, users and/or consumers including Mr. Sharpe, without substantial change in the defective and unreasonably dangerous condition in which they were manufactured and sold.

57.    Physicians implanted as instructed via the Instructions for Use and in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants. Mr. Sharpe received and utilized  Bard IVC Filters in a foreseeable manner as normally intended recommend, promoted, and marketed by the Defendants.

58.    Bard IVC Filters were and are unreasonably dangerous in that, as designed, failed to perform safely when used by ordinary consumers, including Mr. Sharpe, including when the filters were used as intended and in a reasonably foreseeable manner.

59.    Bard IVC Filters were and are unreasonably dangerous and defective in design or formulation for their intended use in that, when they left the hands of the manufacturers and/or supplier, they posed a risk of serious vascular and other serious injury which could have been reduced or avoided, inter alia, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products.

60.    Bard IVC Filters were insufficiently tested and caused harmful adverse events that outweighed any potential utility.

61.    Bard IVC Filters, as manufactured and supplied, were defective due to  inadequate warnings, and/or inadequate clinical trials, testing, and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

- 12 -

62.     Bard IVC Filters, as manufactured and supplied, were defective due to its no longer being substantially equivalent to its predicate device with regard to safety and effectiveness.

63.     Bard IVC Filters as manufactured and supplied by the Defendants are and were defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injuries from use and acquired additional knowledge and information confirming the defective and dangerous nature of its IVC Filters, Defendants failed to provide adequate warnings to the medical community and the consumers, to whom Defendants were directly marketing and advertising; and further, Defendants continued to affirmatively promote their IVC Filters as safe and effective and as safe and effective as their predicate device.

64.     As a direct and proximate result of the Bard IVC Filters' defects, as described herein, Mr. Sharpe have suffered permanent and continuous injuries, pain and suffering, disability and impairment. Mr. Sharpe have suffered emotional trauma, harm and injuries that will continue into the future. Mr. Sharpe have lost their ability to live a normal life and will continue to be so diminished into the future. Furthermore, Mr. Sharpe have lost earnings and will continue to pay medical bills both past and future related to care because of the IVC filter's defect.

65.     By reason of the foregoing, Defendants are liable to the Mr. Sharpe for damages as a result of their failure to warn and/or adequately warn the Mr. Sharpe and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

66.     **WHEREFORE,** Mr. Sharpe demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper.

## COUNT III: NEGLIGENCE

67.    Mr. Sharpe repeats and re-alleges each and every allegation of this Complaint as if set forth in full in this cause of action.

68.    At all times relevant to this cause of action, the Bard Defendants were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including its Bard IVC Filters.

69.    At all times relevant hereto, the Bard Defendants were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Mr. Sharpe and to those people receiving their IVC Filters.

70.    At the time of manufacture and sale of the Bard IVC Filters, the Bard Defendants knew or reasonably should have known the Bard IVC Filters:

    a.    were designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device, as aforesaid;

    b.    were designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device, as aforesaid;

    c.    were designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/o

    d.    were designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena caval wall.

71.    Despite the aforementioned duty on the part of the Bard Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:

    a.    unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Bard IVC Filters, specifically its incidents perforation and other failure;

- 14 -

b. unreasonably and carelessly manufacturing a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

c. unreasonably and carelessly designed a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

d. unreasonably and carelessly designed a product that presented a risk of harm to the Plaintiff and others similarly situated in that it was prone to fail.

72. As a direct and proximate result of the Bard IVC Filters' defects, as described herein, Mr. Sharpe suffered permanent and continuous injuries, pain and suffering, disability and impairment. Mr. Sharpe have suffered emotional trauma, harm and injuries that will continue into the future. Mr. Sharpe have lost their ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Mr. Sharpe has medical bills both past and future related to care because of the Bard IVC Filters' defects.

73. By reason of the foregoing, Defendants are liable to the Mr. Sharpe for damages as a result of their failure to warn and/or adequately warn the Mr. Sharpe and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

74. **WHEREFORE,** Mr. Sharpe, demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT IV: NEGLIGENCE PER SE

(Violation of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§1.21, 801, 803, 807, 820)

75.    Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

76.    At all times herein mentioned, Defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning and post-sale warning and other communications of the risks and dangers of Bard IVC Filters.

77.    By reason of its conduct as alleged herein, Bard violated provisions of statutes and regulations, including but not limited to, the following:

a.    Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§331 and 352, by misbranding its Bard IVC Filters;

b.    Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 321 in making statements and/or representations via word, design, device or any combination thereof failing to reveal material facts with respect to the consequences that may result from the use of Bard IVC Filters to which the labeling and advertising relates;

c.    Defendants violated the 21 C.F.R. §1.21 in misleading the consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of its Bard IVC Filters;

d.    Defendants violated the 21 C.F.R. §801 in mislabeling its Bard IVF Filters as to safety and effectiveness of its products and by failing to update its label to reflect post-marketing evidence that Bard IVC Filters were associated with an increased risk of injuries due to tilting, fracture, migration and perforation;

e.   Defendants violated the 21 C.F.R. §803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration and perforation and/or misreporting these adverse events maintained via the medical device reporting system;

f.   Defendants violated the 21 C.F.R. §807 by failing to notify the FDA and/or the consuming public when its Bard IVC Filters were no longer substantially equivalent with regard to safety and efficacy with regard to post-marketing adverse events and safety signals; and

g.   Defendants violated the 21 C.F.R. §820 by failing to maintain adequate quality systems regulation including, but not limited to, instituting effective corrective and preventative actions,

78.   **WHEREFORE**, Mr. Sharpe demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT V: BREACH OF EXPRESS WARRANTY

79.   Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action. Mr. Sharpe, though their medical providers, purchased Bard IVC Filters from the Bard Defendants.

80.   At all times to this cause of action, the Bard Defendants were merchants of goods of the kind including medical devices and vena cava filters (i.e., Bard IVC Filters).

81.   At the time and place of sale, distribution and supply of the Bard IVC Filters to Mr. Sharpe (and to other consumer and the medical community), the Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Bard IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable

quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested.

82. At the time of Mr. Sharpe' purchase from Defendants, the Bard IVC Filters were not in a merchantable condition and Defendants breached their expressed warranties, in that the filters:

a. were designed in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

b. were designed in such a manner so as to result in a unreasonably high incident of injury to the organs of its purchaser; and

c. were manufactured in such a manner so that the exterior surface of the Bard Filters were inadequately, improperly and inappropriately designed causing the device to weaken and fail.

83. As a direct and proximate result of the Bard IVC Filters' defects, as described herein, Mr. Sharpe have suffered permanent and continuous injuries, pain and suffering, disability, and impairment. Mr. Sharpe have suffered emotional trauma, harm, and injuries that will continue into the future. Mr. Sharpe have lost their ability to live a normal life and will continue to be so diminished into the future. Furthermore, Mr. Sharpe has medical bills both past and future related to care because of the IVC filters' defect.

84. By reason of the foregoing, Defendants are liable to the Mr. Sharpe for damages as a result of their breach express warranty.

85. **WHEREFORE,** Mr. Sharpe demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT VI: BREACH OF IMPLIED WARRANTY

86.    Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

87.    At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold its IVC Filters.

88.    At all relevant times, the Defendants intended its IVC Filters be used in the manner that Mr. Sharpe in fact used them.

89.    Defendants impliedly warranted their IVC Filters to be of merchantable quality, safe and fit for the use for which the Defendants intended them and for which Mr. Sharpe in fact used them.

90.    Defendants breached their implied warranties as follows:

a.    Defendants failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that its  Bard IVC Filters would cause harm;

b.    Defendants manufactured and/or sold their  Bard IVC Filters and said filters did not conform to representations made by the Defendants when they left the Defendants' control;

c.    Defendants manufactured and/or sold their  Bard IVC Filters which were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the  Bard Filters' design or formulation exceeded the benefits associated with that design. These defects existed at the time the products left the Defendants' control; and

d.    Defendants manufactured and/or sold their  Bard IVC Filters when they deviated in a material way from the design specifications, formulas or performance standards or from

- 19 -

otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the products left the Defendants' control.

91.     Further, Defendants' marketing of their Bard IVC Filters was false and/or misleading.

92.     Mr. Sharpe, through their attending physicians, relied on these representations in determining which IVC filter to use for implantation in the Mr. Sharpe.

93.     Defendants' filters were unfit and unsafe for use by users as they posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Defendants breached their expressed warranties and the implied warranties associated with the product.

94.     The foregoing warranty breaches were a substantial factor in causing Mr. Sharpe' injuries and damages as alleged.

95.     As a direct and proximate result of the Bard IVC Filters' defects, as described herein, Mr. Sharpe have suffered permanent and continuous injuries, pain and suffering, disability and impairment. Mr. Sharpe have suffered emotional trauma, harm and injuries that will continue into the future. Mr. Sharpe have lost their ability to live a normal life and will continue to be so diminished into the future. Furthermore, Mr. Sharpe has medical bills both past and future related to care because of the IVC filters' defects.

96.     By reason of the foregoing, Defendants are liable to the Mr. Sharpe for damages as a result of its breaches of implied warranty.

97.     **WHEREFORE,** Mr. Sharpe demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT VII: VIOLATIONS OF APPLICABLE STATE LAW PROHIBITING CONSUMER FRAUD AND UNFAIR AND DECEPTIVE TRADE PRACTICES

98.     Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

99.     Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of Bard's IVC Filters to Mr. Sharpe.

100.     Defendants engaged in unfair, unconscionable, deceptive, fraudulent and misleading acts or practices in violation of all states' consumer protection laws, identified below.

101.     Through its false, untrue and misleading promotion of Bard's IVC Filters, Defendants induced Mr. Sharpe to purchase and/or pay for the purchase of Bard's IVC Filters.

102.     Defendants misrepresented the alleged benefits and characteristics of Bard's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Bard's IVC Filters; misrepresented the quality and efficacy of Bard's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Bard's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Bard's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Mr. Sharpe would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

103.     Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct misled, deceived, and damaged Mr. Sharpe, and Defendants' fraudulent, misleading, and deceptive conduct was perpetrated with an intent that Mr. Sharpe rely on said conduct by purchasing and/or paying for purchases of Bard's IVC Filters. Moreover, Defendants knowingly took advantage of Mr. Sharpe, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Bard's IVC Filters.

104.    Defendants' conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Mr. Sharpe and offends the public conscience.

105.    Mr. Sharpe purchased Bard's IVC Filters primarily for personal, family, or household purposes.

106.    As a result of Defendants' violative conduct in each of the Mr. Sharpe' respective states, Mr. Sharpe purchased and/or paid for purchases of Bard IVC Filters that were not made for resale.

107.    Defendants engaged in unfair competition or deceptive acts or practices in violation of Ind. Code § 24-5-0.5 *et seq.*

108.    **WHEREFORE,** Mr. Sharpe demand judgment against the Bard Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper.

## COUNT XI: PUNITIVE DAMAGES

109.    Mr. Sharpe repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

110.    At all times material hereto, Defendants knew or should have known that their Bard IVC Filters were inherently dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

111.    At all times material hereto, Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of their Bard IVC Filters.

112. Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Mr. Sharpe' physicians, concerning the safety of their Bard IVC Filters. The Defendants' conduct was willful, wanton, and undertaken with a conscious indifference to the consequences that consumers of their product faced, including Mr. Sharpe.

113. At all times material hereto, Defendants knew and recklessly disregarded the fact that their Bard IVC Filters have an unreasonably high rate of tilt, fracture, migration and/or perforation. Notwithstanding the foregoing, Defendants continued to market their Bard IVC Filters aggressively to consumers, including Mr. Sharpe, without disclosing the aforesaid side effects.

114. Defendants knew of their IVC Filters' lack of warnings regarding the risk of fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell their Filters without said warnings so as to maximize sales and profits at the expense of the health and safety of the public, including Mr. Sharpe, in conscious disregard of the foreseeable harm caused by Bard's IVC Filters.

115. Defendants' intentional and/or reckless failure to disclose information deprived Mr. Sharpe' physicians of necessary information to enable them to weigh the true risks of using Bard IVC Filters against their benefits.

116. As a direct and proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the safety and rights of consumers including Mr. Sharpe, they have suffered and will continue to suffer severe and permanent physical and emotional injuries, as described with particularity, above. Mr. Sharpe have endured and will continue to endure pain, suffering, and loss of enjoyment of life; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment and lost wages.

117. Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the safety and rights of consumers including Mr.

Sharpe, thereby entitling Mr. Sharpe to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

**TOLLING OF THE LIMITATIONS PERIOD**

118.    Defendants, through its affirmative misrepresentations and omissions, actively concealed from Mr. Sharpe and Mr. Sharpe' healthcare providers the true and significant risks associated with  Bard's IVC Filters.

119.    As a result of Defendants' actions, Mr. Sharpe and their  prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Mr. Sharpe had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

120.    Accordingly, no limitations period ought to accrue until such time as Mr. Sharpe knew or reasonably should have known of some causal connection between Mr. Sharpe being implanted with a  Bard IVC Filter and the harm Mr. Sharpe suffered as a result.

121.    Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

122.    Additionally, Defendants are equitably estopped from asserting any limitations defense by virtue of their fraudulent concealment and other misconduct as described.

123.    Additionally, the limitations period ought to be tolled under principles of equitable tolling.

**GLOBAL PRAYER FOR RELIEF**

**WHEREFORE,** the Mr. Sharpe demand judgment against the  Bard Defendants as follows:

A.        Compensatory damages, including without limitation past and future medical expenses; past and future pain and suffering; past and future emotional distress; past and future loss of enjoyment of life; past and future lost wages and loss of earning capacity; funeral and burial

expenses; and consequential damages;

     B.       Punitive damages in an amount sufficient to punish Defendants and set an example;

     C.       Disgorgement of profits;

     D.       Restitution;

     E.       Costs and fees of this action, including reasonable attorney's fees;

     F.       Prejudgment interest and all other interest recoverable; and

     G.       Such other additional and further relief as Mr. Sharpe may be entitled to in law or in

equity according to the claims pled herein.

## <u>DEMAND FOR JURY TRIAL</u>

Mr. Sharpe respectfully request trial by jury in the above case as to all issues.

Respectfully submitted,

RILEY WILLIAMS & PIATT, LLC


/s/ *Joseph N. Williams*
Joseph N. Williams (#25874-49)
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
(317) 633-5270
Fax: (317) 462-3348
jwilliams@rwp-law.com

*Counsel for Plaintiff*